## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** * | |
| * | **Crim. No. 25-cr-00018-JB** |
| **v.** * | |
| * | |
| **HAIDAR ABO AYEDH ALMUNTASER** * | |
| * | |

## MOTION TO REVOKE RELEASE ORDER
## AND TO DETAIN DEFENDANT PENDING TRIAL

The United States of America, by and through Keith A. Jones, the Acting United States Attorney for the Southern District of Alabama, files this motion requesting the Court revoke Magistrate Judge David Grand's[1] Order releasing defendant Haidar Abo Ayedh Almuntaser ("Almuntaser") on bond pending trial.[2] Judge Grand stayed his release order until close of business on Monday, February 24, 2025, to give the United States time to file this motion in the Southern District of Alabama.

For all the reasons explained below, Almuntaser poses an extreme flight risk, and there are no conditions that can adequately assure he will be present in court as required. Accordingly, the United States moves this Court to revoke the above-described Order pursuant to 18 U.S.C. § 3145(c), and to then order Almuntaser detained pending trial pursuant to 18 U.S.C. § 3142(e)(1).

---

[1]     United States District Court for the Eastern District of Michigan.

[2]     As of the time of this filing, Judge Grand has not issued a written order setting out the bond terms. The case is listed in the Eastern District of Michigan as *United States v. Almuntaser*, 2:25-mj-30073-DUTY-1.

## PROCEDURAL HISTORY

A grand jury in this district charged Almuntaser with one count of international money laundering conspiracy.  [Doc. No. 1]  As alleged in the indictment, Salim Mohamed Yehya Alsahqani ("Salim") and Nagi Nassar Alsahqani ("Nagi") wired thousands of dollars from the Southern District of Alabama to human smugglers in multiple countries for the express purpose of assisting the illegal entry of Almuntaser and Mahmood Naji Saad Al Qamus ("Qamus") into the United States. [*Id*.]  In March 2021, Almuntaser illegally entered the United States between points of entry in California.  Almuntaser claimed asylum when U.S. Customs and Border Patrol agents encountered him.  Almuntaser has been living in the United States since that time.

This Court issued a warrant for Almuntaser's arrest based on the above-described indictment.  [Doc. No. 7]  The FBI executed this warrant and arrested Almuntaser in Dearborn, Michigan on February 14, 2025.  Almuntaser made an initial appearance and had a Rule 5 hearing in the U.S. District Court for the Eastern District of Michigan.  The United States moved to detain Almuntaser pending trial based on an unmitigable risk of flight.  18 U.S.C. § 3142(f)(2)(A).  A pretrial services report prepared by the Probation Office also recommended Almuntaser's pretrial detention based on his risk of flight.  *See* Attachment A.   Following a hearing on the matter, the United States' motion was denied and Judge Grand ordered Almuntaser released on bond.  The United States requested that the Order be stayed while the United States appealed the decision to this Court.

<u>A<small>NALYSIS</small></u>

If a defendant is ordered released pending trial "by a person other than a judge of a court having original jurisdiction over the offense," the United States may file a motion to revoke this order in the district court with original jurisdiction over the offense. 18 U.S.C. § 3145(a)(1). Thereafter, the district court should promptly review, *de novo*, whether the defendant should be detained or remain on conditions of release. 18 U.S.C. § 3145(c); *United States v. Hurtado*, 779 F.2d 1467, 1480 (11th Cir. 1985) (a district court reviews *de novo* a magistrate judge's pretrial detention ruling).

A defendant shall be detained prior to trial if a court finds that there "no conditions or combinations of conditions that will reasonably assure the presence of the person as required." 18 U.S.C. § 3142(e)(1). Factors for a court to consider when making this determination following a detention hearing include, but are not limited to, the nature and circumstances of the offense, the weight of the evidence, and ties to the community. 18 U.S.C. § 3142(g).

### A.    Nature and Circumstances of the Offense

The money laundering conspiracy with which Almuntaser is charged involved the international movement of funds for the express purpose of paying human smugglers to illegally transport Almuntaser and Qamus across international borders. The money wired as part of this conspiracy allowed Almuntaser to successfully cross

3

eight international borders without a passport.[3]  Clearly, lack of a passport or other official travel documents is no hinderance to Almuntaser's international movement. Furthermore, Almuntaser now has extensive knowledge of human trafficking networks and is comfortable using them.  The scheme Almuntaser used to illegally enter the United States could be replicated to move him out of the United States as well.  This is particularly true since he currently resides in a district that shares both a land and water border with a foreign country.  All of this makes it nearly impossible to mitigate Almuntaser's flight risk.

It is also important to note that Almuntaser illegally entered the United States between points of entry.  While he did claim asylum when encountered by federal agents, he did not do this properly by going to an entry point and filing a claim. Almuntaser's choice to cross the border in the desert rather than at an entry point strongly suggests that his actual desire was to get into the United States undetected, not to legitimately seek refuge here as an asylee.  Furthermore, Almuntaser's asylum claim appears to be noting more than an excuse to cover his actual motivation for entering this country.  Almuntaser did not flee directly to the United States to escape persecution in war-torn Yemen.  Almuntaser left Yemen in 2018 and lived in Djibouti, Egypt, and then Ecuador for nearly two years.  He traveled between these countries using his legitimate Yemeni passport.

---

[3]      (1) Ecuador to Colombia; (2) Colombia to Panama; (3) Panama to Costa Rica; (4) Costa Rica to Nicaragua; (5) Nicaragua to Honduras; (6) Honduras to Guatemala; (7) Guatemala to Mexico; and (8) Mexico to the United States.

Salim and Nagi wired nearly $16,000.00 to human smugglers for the purpose of illegally transporting Almuntaser and Qamus across international borders. This was more than enough money for them both to fly to the United States using their legitimate Yemini passports. However, rather than seek any lawful means to enter the United States, their actions make it clear that they were attempting to be inconspicuous. Despite the fact that Almuntaser and Qamus (1) lived together in Ecuador, (2) both were attempting to enter the United States, and (3) both had the same source of financial supply to help them get here — *i.e.*, the money sent by Salim and Nagi —, Almuntaser and Qamus purposely traveled separately on their journey north. Ultimately, their plan worked and Almuntaser made it into the United States.

This conspiracy is centered on a plan to illegally sneak Almuntaser and Qamus across international borders. Illegal international travel is at the very heart of this case. If Almuntaser is released pending trial, there is a strong likelihood that he would flee the United States for a foreign country where he has substantial connections. There are no conditions that will adequately mitigate this risk.

## B.    Weight of the Evidence

To prove the money laundering conspiracy offense, the United States must prove that: "(1) two or more people agree to try to accomplish a common and unlawful plan to [commit international money laundering]; and (2) the defendant knew about the plan's unlawful purpose and voluntarily joined in it." ELEVENTH CIR. PAT. JURY INS., No. O74.5. There is substantial, admissible evidence by which the United States will prove these elements.

During this investigation, numerous subpoenas were issued and search warrants executed. Through these processes, the FBI uncovered the communications between all four co-conspirators in which they discuss the need to send money to specifically-identified human traffickers so that Almuntaser and Qamus could be smuggled along the route from Ecuador to the United States. Documents received from various money transmitters show that Salim and Nagi, or other individual's acting at their direction, actually sent the money from the Southern District of Alabama to locations outside the United States. The communications make clear that all four co-conspirators understood why the money was being wired to these human traffickers — to facilitate Almuntaser's and Qamus' journey with the goal of illegally entering the United States. Furthermore, in a post-*Miranda* interview at the time of his arrest, Almuntaser admitted that he illegally entered the United States with the financial support of Salim and Nagi.

## C.    Ties to the Community

Almuntaser has zero ties to the Southern District of Alabama. There is no indication that he has ever been to this district. Rather, after illegally entering the United States and claiming asylum, Almuntaser was released by federal agents. Thereafter, he lived in North Carolina, New York, and Michigan. There is nothing tying Almuntaser to the Southern District of Alabama. Not work, not family, not anything.

## CONCLUSION

For all of the reasons stated here in, this Court should grant the United States' motion to revoke Almuntaser's release order, and this Court should also grant the United States' motion to detain Almuntaser pending trial.

Respectfully submitted this 20th day of February 2025.

KEITH A. JONES
ACTING UNITED STATES ATTORNEY

By: */s/ Christopher J. Bodnar*
Christopher J. Bodnar
Assistant United States Attorney
63 South Royal Street, Suite 600
Mobile, Alabama 36602